**UNITED STATES of America, Appellee,**

v.

**David PIPER, Defendant, Appellant.**

**No. 94–1197.**

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 1994.

Decided Sept. 8, 1994.

Peter Clifford, Kennebunk, ME, for appellant.

Michael M. DuBose, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., Portland, ME, was on brief, for appellee.

Before SELYA and CYR, Circuit Judges, and ZOBEL,* District Judge.

SELYA, Circuit Judge.

This appeal asks us to revisit, in a slightly altered form, the question of whether conspiracy convictions qualify as triggering and/or predicate offenses for purposes of the career offender provisions of the federal sentencing guidelines.[1] This question has divided the courts of appeals. On reflection, we adhere to the majority view and continue to treat certain conspiracy convictions as includable in determining career offender status. Because the district court took this (legally proper) approach, and because appellant's only non-sentence-related assignment of error is impuissant, we affirm the judgment below.

## I. BACKGROUND

On September 2, 1993, in proceedings pursuant to Fed.R.Crim.P. 11, defendant-appellant David Piper waived indictment and pleaded guilty to a two-count information charging him with conspiracy to possess with intent to distribute over 100 kilograms of marijuana, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and using or carrying a firearm in connection with a drug-trafficking crime, *see* 18 U.S.C. § 924(c). On February 23, 1994, the district court imposed a 25-year prison sentence on count 1, terming Piper a career offender. The court also sentenced Piper to an incremental 5-year prison term on the weapons charge.

Piper appeals, alleging error in both the acceptance of his guilty plea and the application of the career offender guideline.

## II. THE RULE 11 CHALLENGE

Appellant's initial claim of error need detain us only in the respect that it requires us to make clear that specific intent to effectuate an underlying substantive offense, and not an intent to commit the substantive offense oneself, is all that is necessary to sustain a conspiracy conviction. Before reaching this vexing point, we first dispatch some necessary preliminaries.

Although Piper now contends that the district court erred in accepting a plea to the information, he did not seek to withdraw his plea below. Consequently, he can prevail on

---

* Of the District of Massachusetts, sitting by designation.

1. The career offender guideline applies to an adult defendant who commits a felony "that is either a crime of violence or a controlled substance offense," having previously incurred "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (Nov. 1993). We sometimes call the offense of conviction the "triggering offense" in contradistinction to the "predicate offenses," *i.e.*, the prior felony convictions.

**614**

this afterthought ground only if he demonstrates a substantial defect in the Rule 11 proceeding itself. *See United States v. Mateo,* 950 F.2d 44, 45 (1st Cir.1991); *United States v. Parra–Ibanez,* 936 F.2d 588, 593–94 (1st Cir.1991). Appellant's attempts to meet this exacting standard lack force.

Appellant advances three main arguments in support of this assigned error,[2] each of which centers around the drug-trafficking count. He asserts that the district court (1) mischaracterized the nature and elements of the offense, thereby frustrating his ability to understand the charge to which he pled guilty, in derogation of Fed.R.Crim.P. 11(c)(1); (2) failed to ensure that his plea was voluntary, in derogation of Fed.R.Crim.P. 11(d); and (3) accepted his plea despite the lack of an adequate factual basis, in derogation of Fed.R.Crim.P. 11(f).

■ We have inspected the plea colloquy with care, tested it in the crucible of Rule 11, *see, e.g., Parra–Ibanez,* 936 F.2d at 590 (explaining that the "strictures of Rule 11 ... are calculated to insure the voluntary and intelligent character of the plea"); *United States v. Allard,* 926 F.2d 1237, 1244–45 (1st Cir.1991) (identifying core Rule 11 concerns: absence of coercion, understanding of charges, and knowledge of consequences of guilty plea), and find no hint of any mischaracterization. To the precise contrary, the lower court proceeded in a meticulous fashion to ensure that appellant understood the gist of the information. A judge's responsiveness to a defendant's articulated concerns is of great importance in Rule 11 proceedings. *See, e.g., United States v. Buckley,* 847 F.2d 991, 999 (1st Cir.1988) (explaining need for court to respond appropriately to defendant's questions at change-of-plea hearing), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). Here, the judge not only fulfilled the core requirements of Rule 11, but also furnished suitably detailed explanations when appellant sought clarification of certain points. And, moreover, the record is replete with indications that appellant under-

stood the charges, faced up to them, and chose voluntarily to plead guilty.

■ We need not paint the lily. An appellate court must read the transcript of a Rule 11 colloquy with practical wisdom as opposed to pettifoggery. *See United States v. Medina–Silverio,* 30 F.3d 1, 3 (1st Cir.1994) (emphasizing that there is no "formula of 'magic words' in meeting the requirements of Rule 11"); *Allard,* 926 F.2d at 1245 (similar); *see also* Fed.R.Crim.P. 11(h) (explaining that, to warrant vacation, irregularities in a plea-taking proceeding must affect the defendant's "substantial rights"). Viewed from that perspective, appellant's first two arguments are meritless. The district court's performance in explaining the charges and ensuring that defendant understood them easily passes muster under Rule 11(c) and (d). The plea was voluntary.

The third prong of appellant's assignment of error requires special mention, for the argument advanced indicates some confusion over what proof is required in order to sustain a conspiracy conviction. Appellant's thesis is that, while he agreed to help steal the marijuana, he did not have an intent to distribute it himself, and, thus, could not be guilty of (and could not validly plead guilty to) the conspiracy charge.

■ This thesis does not receive a passing grade. A specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy. This conclusion is neither new nor original. In *United States v. Rivera–Santiago,* 872 F.2d 1073 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 & 493 U.S. 832, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989), we upheld a conviction for conspiracy to distribute marijuana based on evidence that the defendant had agreed to store a large quantity of the drug in his house, even though no evidence had been adduced that he intended to play a role in its distribution. *See id.* at 1081. In the process, we explained that:

2. Grasping at straws, appellant suggests a variety of other ways in which he deems the Rule 11 proceeding flawed. These suggestions range from the jejune to the frivolous. None merit discussion.

an individual could be found to be part of a conspiracy to possess and distribute [marijuana] even though he neither directly participated in interstate trafficking nor knew the precise extent of the enterprise. The fact that he participated in one ... link of the distribution chain, *knowing that it extended beyond his individual role,* was sufficient.

*Id.* at 1079 (emphasis supplied).

Any confusion in this area of the law may arise from a possible ambiguity in certain of our earlier decisions. In *Rivera–Santiago,* for example, we stated, in the paragraph immediately preceding the language quoted above, that "[i]n order to prove that a defendant belonged to and participated in a conspiracy, the government must prove two kinds of intent; intent to agree and intent to commit the substantive offense." *Id.* This "double intent" formulation neither began with *Rivera–Santiago, see, e.g., United States v. Drougas,* 748 F.2d 8, 15 (1st Cir. 1984), nor ended there, *see, e.g., United States v. Mena–Robles,* 4 F.3d 1026, 1031 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994); *United States v. Nueva,* 979 F.2d 880, 884 (1st Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1615, 123 L.Ed.2d 175 (1993). Insofar as we can determine, the formulation made its First Circuit debut in *United States v. Flaherty,* 668 F.2d 566 (1st Cir.1981), where the panel stated that "[t]wo types of intent must be proved: intent to agree and intent to commit the substantive offense." *Id.* at 580. For this proposition the panel cited *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). But *Gypsum* says something slightly different: "[i]n a conspiracy, two different types of intent are generally required—the basic intent to agree ... and the more traditional *intent to effectuate the object of the conspiracy.*" (emphasis supplied). *Id.* at 444 n. 20, 98 S.Ct. 2877 n. 20. Though slight, the difference is important. Its significance comes into focus in the case before us.

■ Perhaps the best way to illustrate the difference is by asking a question: does one who intentionally agrees to undertake activities that facilitate commission of a substantive offense, but who does not intend to commit the offense himself, have the requisite intent to be convicted of conspiracy? According to a literal reading of *Flaherty*—a reading which we are sure the *Flaherty* court never intended and which, to our knowledge, has never been implemented in this circuit— the answer to the question would be in the negative. Under such a reading, a defendant must have the "intent to commit the substantive offense" in order to ground a conviction. But under *Gypsum,* by contrast, the answer to the question is plainly in the affirmative, for our hypothetical defendant "inten[ded] to effectuate the object of the conspiracy."

*Gypsum's* formulation not only makes good sense, but it is also good law. In practice, our cases have hewed to that line. *See, e.g., Rivera–Santiago, supra; United States v. Moosey,* 735 F.2d 633, 635–36 (1st Cir.1984) (upholding conviction for conspiracy even though defendant personally had not intended to, and did not, participate in the underlying substantive offense of interstate trafficking).

We conclude, therefore, that the "double intent" language contained in *Flaherty* and its progeny, correctly read, merely rehearses the *Gypsum* formulation, and requires that the government prove an intent to agree and an intent to effectuate the commission of the substantive offense. A defendant need not have had the intent personally to commit the substantive crime.

Here, the record shows beyond hope of contradiction that appellant, whether or not he meant personally to participate in the distribution of the contraband, nonetheless knowingly assisted in its asportation, with foreknowledge that the conspiracy extended beyond the theft to the eventual disposal at some later date of the purloined marijuana (totaling over 145 kilograms). He thus possessed the requisite *mens rea.*

■ That ends the matter. Though a district court has an unflagging obligation to assure itself that a guilty plea is grounded on an adequate factual foundation, *see, e.g., United States v. Ruiz–Del Valle,* 8 F.3d 98, 102 (1st Cir.1993), it need not gratuitously explore points removed from the elements of

the offense. Because an adequate factual basis existed to undergird appellant's plea, his assignment of error collapses.

## III. THE CAREER OFFENDER CHALLENGE

We now reach the heart of the appeal. We choose to present our analysis in four segments. First, we set the stage. Second, we address the status of conspiracy convictions under the career offender guideline. Next, we consider the propriety of including state narcotics convictions as predicate offenses. Finally, we confront appellant's constitutional challenge.

### A. *Setting the Stage.*

The career offender guideline provides that a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (Nov. 1993). An associated guideline defines a "controlled substance offense" for all pertinent purposes as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(2). To elucidate this definition, the Sentencing Commission devised Application Note 1. The note instructs readers that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n. 1).

When appellant appeared for sentencing, the district court, relying on *United States v. Fiore*, 983 F.2d 1 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1830, 123 L.Ed.2d 458 (1993), invoked Application Note 1 and determined that the instant offense of conviction—conspiracy to possess with intent to distribute over 100 kilograms of marijuana—constituted a controlled substance offense for purposes of U.S.S.G. § 4B1.1. The conviction therefore triggered consideration of the career offender regime.

This step spelled trouble for appellant. The presentence investigation report reflected that he previously had racked up eleven adult criminal convictions. The judge counted two of them—a 1980 state court conviction for selling a controlled substance (PCP), and a 1985 state court conviction for possession of cocaine with intent to distribute—as comprising the predicate offenses needed to bring the career offender guideline to bear. Hence, the court imposed a much stiffer sentence—25 years—than the offense of conviction, taken in a vacuum, otherwise would have generated.

### B. *Conspiracies As Covered Offenses*

Appellant challenges the district court's ruling that his conspiracy conviction qualifies as a controlled substance offense.[3] Because this challenge hinges on the legal effect of the conviction, our review is plenary. *See Fiore*, 983 F.2d at 2; *see also United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992) (holding that a *de novo* standard of review governs interpretive questions under the sentencing guidelines).

Appellant launches this offensive by remarking the obvious: conspiracy convictions are not mentioned in the body of either the relevant guidelines, U.S.S.G. §§ 4B1.1–4B1.2, or the enabling legislation, 28 U.S.C.

---

**3.** In this case the lower court ruled that the conspiracy conviction constituted a triggering offense. We note, however, that the relevant definitions are substantially identical, and, therefore, answering the question of whether a conspiracy charge can constitute a triggering offense for purposes of the career offender guideline necessarily answers the analogous question of whether a conspiracy conviction can constitute a predicate offense for such purposes. *See, e.g., United States v. Bell*, 966 F.2d 703, 705 (1st Cir.1992)

(explaining that it would be a "bizarre ... anomaly" if the same crime were determined to be a triggering offense, but not a predicate offense, under the career offender guideline, or vice-versa); *see also United States v. Price*, 990 F.2d 1367, 1369 (D.C.Cir.1993) (stating that, in regard to classification, the statutory definition of what constitutes a triggering offense and what constitutes a predicate offense "poses the same problem").

§ 994(h).[4] He acknowledges that Application Note 1, quoted *supra* Part III(A), purports to include certain conspiracies as triggering and/or predicate offenses, but limns two reasons why sentencing courts must boycott this conclusion. First, he asserts that the Sentencing Commission's commentary is inconsistent with the guideline itself and should, therefore, be disregarded. Second, he asserts that if, by reason of the commentary or otherwise, the guideline is construed to encompass conspiracies (particularly drug-trafficking conspiracies), its promulgation exceeds the Sentencing Commission's statutory authority. Neither assertion carries the day.

■ 1. *Consistency with the Guideline.* With respect to the Sentencing Commission, the Court's instructions could scarcely be more explicit:

> Commentary which functions to interpret [a] guideline or explain how it is to be applied, controls, and if failure to follow, or a misreading of, such commentary results in a sentence select[ed] ... from the wrong guideline range, that sentence would constitute an incorrect application of the sentencing guidelines. . . .

*Stinson v. United States,* —— U.S. ——, —— – ——, 113 S.Ct. 1913, 1917–18, 123 L.Ed.2d 598 (1993) (citations and internal quotation marks omitted). To be sure, commentary, though important, must not be confused with gospel. Commentary is not binding in all instances. *See Stinson,* —— U.S. at ——, 113 S.Ct. at 1918. In particular, commentary carries no weight when the Commission's suggested interpretation of a guideline is "arbitrary, unreasonable, inconsistent with the guideline's text, or contrary to law." *Fiore,* 983 F.2d at 2.

An application note and a guideline are inconsistent only when "following one will result in violating the dictates of the other." *Stinson,* —— U.S. at ——, 113 S.Ct. at 1918. That is not the situation here. Because the application note with which we are concerned neither excludes any offenses expressly enumerated in the guideline, nor calls for the inclusion of any offenses that the guideline expressly excludes, there is no inconsistency.

By like token, the application note, when measured against the text of the career offender guideline, does not appear arbitrary or unreasonable. In real-world terms, drug-trafficking conspiracies cannot easily be separated from the mine-run of serious narcotics offenses and, therefore, the Sentencing Commission's inclusion of conspiracy convictions is most accurately viewed as interstitial. It is a logical step both from a lay person's coign of vantage and from the standpoint of the Commission's (and Congress's) oft-demonstrated preoccupation with punishing drug traffickers sternly. It in no way detracts from the dictates of the guideline itself. In short, the application note comports sufficiently with the letter, spirit, and aim of the guideline to bring it within the broad sphere of the Sentencing Commission's interpretive discretion. *Cf., e.g., id.* at ——, 113 S.Ct. at 1919 (holding that an agency's interpretation of its own regulations must be given controlling weight if it does not violate the Constitution or a federal statute); *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 1850–51, 104 L.Ed.2d 351 (1989) (similar).

■ 2. *Consistency with Section 994(h).* As we observed at the outset, the question of whether Application Note 1 contravenes 28 U.S.C. § 994(h) has divided the courts of appeals. Three circuits hold that Application Note 1 conflicts with the statute. *See United*

---

**4.** In the statute, Congress directed the Commission, *inter alia,* to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for an adult defendant convicted of a felony that is either "(A) a crime of violence; or (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a)," so long as such defendant "previously [has] been convicted of two or more felonies," each of which is a crime of violence or controlled substance offense (defined in the same way as triggering offenses are defined). 28 U.S.C. § 944(h). The Commission itself recognized the primacy of the statute and wrote the career offender guideline in part to reflect the statutory requirements. *See* U.S.S.G. § 4B1.1, comment. (backg'd.) (explaining that section 4B1.1 implements the mandate of 28 U.S.C. § 994(h)).

*States v. Mendoza–Figueroa*, 28 F.3d 766 (8th Cir.1994); *United States v. Bellazerius*, 24 F.3d 698, 702 (5th Cir.1994); *United States v. Price*, 990 F.2d 1367, 1369 (D.C.Cir. 1993). These courts stress that a "conspiracy to commit a crime involves quite different elements from whatever substantive crime the defendants conspire to commit" and thus, cannot be said to be one of the offenses "described in" the statutes that section 994(h) enumerates. *Price*, 990 F.2d at 1369. Accordingly, these courts hold that the Commission's attempt to introduce crimes not expressly mentioned in section 994(h) into the career offender calculus is contrary to law. *See, e.g., id.* In a related vein, these courts also hold that since the Commission stated in a "background" comment that it drafted U.S.S.G. § 4B1.1 to implement the "mandate" of section 994(h), and did not provide any other legal authority in support of its enactment, the inclusion of conspiracies in the career offender guideline cannot be regarded as an exercise of the Commission's discretionary powers under 28 U.S.C. § 994(a). *See, e.g., Bellazerius*, 24 F.3d at 702.

Several other circuits have adopted a diametrically opposite view. These courts hold that "[s]ection 994(h) provides the minimum obligation of the Commission and does not prohibit the inclusion of additional offenses that qualify for such treatment." *United States v. Damerville*, 27 F.3d 254, 257 (7th Cir.1994); *accord United States v. Hightower*, 25 F.3d 182, 187 (3d Cir.1994); *United States v. Allen*, 24 F.3d 1180, 1187 (10th Cir.1994); *United States v. Heim*, 15 F.3d 830, 832 (9th Cir.1994); *cf. United States v. Beasley*, 12 F.3d 280, 283 (1st Cir.1993). Rather than viewing section 994(h) as a ceiling, limiting the Sentencing Commission's power, these courts, constituting a majority of the circuits that have spoken to the issue, see the statute as a floor, describing the

irreducible minimum that the Commission must do by way of a career offender guideline, but without in any way inhibiting the Commission, in the exercise of its lawfully delegated powers, from including additional offenses within the career offender rubric. *See, e.g., Damerville*, 27 F.3d at 257.

We find the majority view more persuasive. In this regard, we think it is significant that this view is more compatible with discernible congressional intent. The legislative history makes plain that section 994(h) is "not necessarily intended to be an exhaustive list of types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." S.Rep. No. 98–225, 98th Cong., 1st Sess. 176 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3359.[5]

To cinch matters, we believe that *Fiore*—a case in which we held that a conviction for a conspiracy to commit a crime of violence must be treated for career offender purposes the same as a conviction for the crime of violence itself, 983 F.2d at 3—aligns us doctrinally with the majority view. And because we continue to believe that *Fiore* was correctly decided, we do not resist its pull.

3. *Validity of the Definitions.* Having concluded that 28 U.S.C. § 994(h) neither comprises a ceiling nor an exclusive compendium of the crimes that are eligible to serve as triggering or predicate offenses, we must next determine whether the Commission has lawful power to write the definition of "crime of violence" and "controlled substance offense" to include certain conspiracy convictions. We believe the Commission's definitions are both valid and applicable to Piper's case.

■ On this issue, our work is largely behind us, for we have addressed the ques-

---

**5.** This legislative history also casts light on the Commission's use of the term "mandate," referring to the "mandate" of section 994(h), in the background commentary to the career offender guideline. *See* U.S.S.G. § 4B1.1, comment. (backg'd.). We think it shows rather clearly that Congress wanted to guide the Commission in a general direction, not merely to instruct it to make a one-time mechanical adjustment. In our

opinion, the overall context suggests that Congress's "mandate" directed the Commission to accord career offender treatment to whatever drug-related crimes the Commission believed to be on a par with the offenses enumerated in section 994(h). And we think that the Commission used the word "mandate" to refer to this broader policy.

tion on a number of previous occasions. In determining what crimes constitute covered offenses, we use the formal categorical approach introduced by the Supreme Court in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *See Fiore,* 983 F.2d at 3; *accord United States v. Dyer,* 9 F.3d 1, 2 (1st Cir.1993) (per curiam). Under such an approach, we look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction. *See Fiore,* 983 F.2d at 3; *see also United States v. Winter,* 22 F.3d 15, 18 (1st Cir.1994).

■■■ To determine the status of a conspiracy conviction vis-a-vis the career offender rubric, the key question is "conspiracy to do what?" *Fiore,* 983 F.2d at 3. If the object of the conspiracy is to commit a crime of violence or a controlled substance offense, as those terms are defined for purposes of U.S.S.G. § 4B1.1, then the career offender provision is applicable. Here, answering the question brings the offense of conviction within the ambit of the career offender guideline, as appellant acknowledges that he pleaded guilty to a charge that he participated in a drug-trafficking conspiracy.

Appellant tries mightily to avoid this conclusion. He claims that *Fiore* should not be given suzerainty here. In this connection, appellant makes two points: (1) *Fiore* involved a conspiracy to commit a crime of violence, rather than a conspiracy to commit a controlled substance offense; and (2) *Fiore* involved a predicate offense rather than a triggering offense. To be sure, these distinctions exist—but they are distinctions that make no legally relevant difference.

Appellant's first point simply will not wash. The rationale on which the *Taylor* Court relied in choosing a formal categorical approach is equally applicable to controlled substance offenses. For one thing, the approach mirrors Congress's approach. *See Taylor,* 495 U.S. at 575, 110 S.Ct. at 2143. For another thing, the same practical difficulties that militate against the use of a fact-specific analytic method are present in both situations. *Cf. Beasley,* 12 F.3d at 284 (explaining that to distinguish controlled substance predicate offenses based on the juris-

diction of conviction would "produce a crazy quilt of punishment results").

We need not dwell on appellant's second point. As we already have noted, *see supra* note 3, an identical analysis applies whether the offense in question is a triggering or predicate offense. Consequently, the same result must obtain. *Fiore* controls.

■■■ *4. Rulemaking.* Appellant mounts one last challenge to the inclusion of conspiracy convictions in the career offender calculus. This challenge derives from the notion that the promulgation of Application Note 1 constituted improper rulemaking in violation of 28 U.S.C. § 994(x). We reject this initiative. A fair reading of the statute indicates that it requires no more than that the promulgation of the guidelines themselves shall be subject to the rulemaking procedures detailed in the Administrative Procedure Act (APA). *See* 28 U.S.C. § 994(x) (stating that the relevant APA provisions, such as 5 U.S.C. § 553, "relating to the publication in the Federal Register and public hearing procedure, *shall apply to the promulgation of Guidelines* pursuant to this section") (emphasis supplied).

In any event, Application Note 1 is nothing more than an interpretive aid. As such, it is "akin to an agency's interpretation of its own legislative rules." *Stinson,* —— U.S. at ——, 113 S.Ct. at 1919. It is not necessary that such interpretations be promulgated in accordance with the formal requirements of the APA. *See* 5 U.S.C. § 553 (excluding from rulemaking procedures "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice").

### C. *Prior State Convictions as Predicate Offenses.*

■■■ Taking a slightly different tack, appellant asseverates that the enumeration of specific statutes within section 994(h) precludes incorporation of state court convictions as predicate offenses under the career offender provision; and that, therefore, the court below committed reversible error in counting his convictions for state drug-trafficking crimes. We do not agree.

The short of it is that this asseveration has been advanced—and rebuffed—in many other cases. *See, e.g., Beasley,* 12 F.3d at 284 (holding that to exclude state drug-trafficking convictions would thwart Congress's intent, do violence to the language of section 994(h), and create an unjustified anomaly); *United States v. Rivera,* 996 F.2d 993, 996 (9th Cir.1993) (holding the Sentencing Commission's inclusion of state convictions as predicate offenses to be both permissible and reasonable); *United States v. Whyte,* 892 F.2d 1170, 1174 (3d Cir.1989) (stating that, under section 994(h), predicate drug offenses need only involve "conduct that could have been charged federally"), *cert. denied,* 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990); *see also Dyer,* 9 F.3d at 1 (explicitly endorsing *Whyte* rationale).

Displayed against the monochromatic backdrop of this massed authority, appellant's challenge fades.[6]

### D. *Constitutionality of the Sentence.*

Appellant's last-ditch argument is that the mere application of the career offender guideline in this case infracts his constitutional rights. Specifically, he contends that the Sentencing Commission, in promulgating the guideline, violated both the Due Process Clause (by treating all career offenders alike, without regard to their individual circumstances) and the Cruel and Unusual Punishment Clause (by prescribing a sentence which does not depend on the gravity of the conduct underlying the offense of conviction).[7]

This rumination deserves short shrift. Appellant's constitutional challenge leans almost exclusively on *United States v. Spencer,* 817 F.Supp. 176 (D.D.C.1993). However, *Spencer* has since been reversed, *see United States v. Spencer,* 25 F.3d 1105 (D.C.Cir.1994), and

is, therefore, a cardboard crutch. Moreover, the reversal seems richly deserved. After all, the prevailing view is that the career offender guideline does not violate the Due Process Clause. *See, e.g., United States v. Davis,* 15 F.3d 526, 533 n. 5 (6th Cir.1994); *United States v. John,* 936 F.2d 764, 766 n. 2 (3d Cir.1991); *United States v. Jones,* 907 F.2d 929, 930 (9th Cir.1990); *United States v. Green,* 902 F.2d 1311, 1313 (8th Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990). We share this view.

To the extent that appellant's claim of cruel and unusual punishment rests on the district court's reasoning in *Spencer,* it is similarly undone. Perhaps more importantly, appellant fails to indicate any factor that meaningfully distinguishes his sentence as a career offender from other sentences found by other courts to be in complete conformity with the strictures of the Eighth Amendment. *See, e.g., Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Davis,* 15 F.3d at 533 n. 5; *John,* 936 F.2d at 766 n. 2. Thus, appellant's constitutional attack misses the mark.

## IV. CONCLUSION

We need go no further. Having examined the record and the applicable law with care, we find appellant's guilty plea to have been properly received and his sentence to have been imposed in accordance with law. The career offender regime, as crafted by Congress and the Sentencing Commission, is harsh, but the courts are obliged to enforce it according to its tenor. The district court did so here.

*Affirmed.*

---

6. On appeal, Piper contends for the first time that his antecedent state convictions are "not fairly or rationally linked to the [enumerated] federal crimes." We eschew consideration of this late-blooming argument. It is settled that, in respect to criminal sentencing, as in other contexts, arguments not squarely presented to the sentencing court cannot debut as of right in an appellate venue. *See United States v. Sepulveda,* 15 F.3d 1161, 1202 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994); *United States v. Ocasio–Rivera,* 991

F.2d 1, 3 (1st Cir.1993); *United States v. Dietz,* 950 F.2d 50, 55 (1st Cir.1991).

7. We note that appellant also alludes in passing to the possibility that the career offender guideline abridges the Equal Protection Clause. Because this allusion is not accompanied by any developed argumentation, we deem it waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).