# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2753

_____

United States of America

*Plaintiff - Appellee*

v.

Wesley Cortez Oatman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: April 3, 2017
Filed: July 12, 2017
[Unpublished]

_____

Before SMITH, Chief Judge, ARNOLD and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Wesley Oatman pleaded guilty to conspiracy to distribute heroin pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. For sentencing purposes, Oatman was deemed a career offender according to the United States Sentencing Guidelines because he had at least three qualifying prior state felony convictions for controlled substance offenses. *See* U.S.S.G. §§ 4B1.1(a) and 4B1.2(b). Using the sentencing

enhancement for career offenders, the district court[1] determined that Oatman's Guidelines range was 262 to 327 months' imprisonment. The court, however, varied downward below the Guidelines range, imposing a 220-month sentence based on Oatman's offense and offender characteristics. Without the career-offender enhancement, Oatman's Guidelines range would have been 168 to 210 months. Oatman appeals the application of the career-offender enhancement. He does not challenge whether the enhancement applies to him specifically. Instead, he argues that the Sentencing Commission exceeded its congressional mandate by including state offenses in the types of crimes that trigger the enhancement. For the reasons stated herein, we affirm Oatman's sentence.

"In 28 U.S.C. § 994(h), Congress directed the Sentencing Commission to establish guidelines requiring a sentence at or near the statutory maximum for adult defendants convicted of certain felonies, if the defendants have already been convicted of two or more 'offense[s] described in' certain federal drug trafficking statutes." *United States v. Consuegra*, 22 F.3d 788, 789 (8th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 994(h)(2)(B)). "The authority Congress has given the Sentencing Commission to promulgate guidelines is extremely broad." *United States v. Galloway*, 976 F.2d 414, 419–20 (8th Cir. 1992) (en banc). "Broad as that discretion may be, however, it must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 757 (1997). In formulating the career-offender enhancement, the Commission promulgated U.S.S.G. § 4B1.2, which includes both state and federal convictions as qualifying offenses. *See Consuegra*, 22 F.3d at 789. Oatman challenges § 4B1.2 as inconsistent with the Commission's congressional mandate. He argues that state drug convictions affect black men more than similarly situated white men. Because Congress commanded the Commission to

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

establish guidelines "entirely neutral as to . . . race", *see* 28 U.S.C. § 994(d), Oatman argues that the Commission exceeded its mandate by including state offenses.

Oatman argues that 64 percent of defendants receiving the career-offender enhancement are black, which is disproportionate to the general population. He contends that because of the systemic issues of racism in the United States, the enhancement, although "facially neutral," fails to meet the statutory command of being "entirely neutral." He traces his argument from the origins of slavery in this country, through the Civil War, to the poverty-stricken South Side of Chicago where he grew up.

Oatman does not claim that § 4B1.2 is unconstitutional. Instead, he argues that the race-neutral language of § 994(d) demonstrates that Congress intended the Guidelines to provide greater protections for racial minorities than the Constitution. *Cf. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (saying the Religious Freedom Restoration Act of 1993 provides greater protections than the Free Exercise Clause of the First Amendment). Oatman asks this court to invalidate § 4B1.2 under a disparate-impact analysis. Under his suggested analysis, a Guidelines enhancement may pass constitutional muster under the Equal Protection Clause, but fail a higher statutory standard imposed by § 994(d). He relies on a number of statutory interpretation cases that have allowed causes of action for claims based on the disparate impact of certain policies. *See, e.g.*, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988); *Dothard v. Rawlinson*, 433 U.S. 321 (1977). Oatman, however, misses that these disparate-impact cases arise under civil rights statutes designed to remedy discrimination. *See, e.g.*, *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2525 (2015) (expanding disparate-impact claims to include the Fair Housing Act among Title VII and the Age Discrimination in Employment Act). Oatman does not present a cause of action under a statute designed to remedy discrimination. He contends that the Commission exceeded its authority by promulgating § 4B1.2 because it conflicts with

the race-neutral statutory directive of § 994(d), which is a question of statutory interpretation.[2] *See United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) (using "principles of statutory interpretation, deference, and logic" to analyze whether the Guidelines fall within the mandate of § 994); *see also Galloway*, 976 F.2d at 420 (reviewing Guidelines provisions under the *Chevron*[3] deference rubric).

Although we review de novo whether the Commission acted within its statutory authority in promulgating the Guidelines, we will uphold the Commission's interpretation of its mandate if it is reasonable. *See Consuegra*, 22 F.3d at 789. We decline to address Oatman's contention that § 4B1.2 is in conflict with § 994(d)'s neutrality directive based on statistical disparities because Oatman did not make this argument before the district court. We will not consider an argument raised for the first time on appeal unless the appellant completes the difficult task of establishing all four requirements for plain error:

> First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

---

[2]We declined to address an argument similar to Oatman's in *United States v. Ybabez*, in which the appellant argued that § 4B1.1 was not neutral with regard to socioeconomic status, because the defendant failed to demonstrate a miscarriage of justice. 919 F.2d 508, 510 (8th Cir. 1990).

[3]*See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (alterations in original) (citations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732–36 (1993)).

For this court to overturn Oatman's sentence, he must show that the district court erred. In addition, the identified error "must be clear or obvious, rather than subject to reasonable dispute." *Id.* None of Oatman's statistical evidence regarding state-based racial disparities was presented to the district court. Courts that have addressed the inclusion of state convictions in the career-offender enhancement have found the enhancement reasonable because "[t]o distinguish among [defendants] on the basis of *which jurisdiction* happened to punish the past criminal behavior seems (in the absence of some special circumstance) close to irrational." *United States v. Beasley*, 12 F.3d 280, 283 (1st Cir. 1993). Eliminating state convictions from the career-offender enhancement would be "at least as likely to produce a crazy-quilt of punishment results, as to connect similar punishments rationally to similar past behavior." *Id.* at 284. The Guidelines were intended to reduce disparity, not increase it. *See Mistretta v. United States*, 488 U.S. 361, 365–66 (1989).

We decline to find it to be clear or obvious error by the district court to apply the Guidelines consistent with other federal courts when it has done so without Oatman's production of any legal authority to the contrary and without the benefit of any of the evidence presented for the first time on appeal.

Accordingly, we affirm.

_____