24 F.3d 698
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dino BELLAZERIUS, a/k/a Angelo Di Adonis, a/k/a Constantine
Dino Adonis, a/k/a Charles Wesley Dicken,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Louis BILLA, Defendant-Appellant.
 Nos. 93-3157, 93-3168.
 United States Court of Appeals,
Fifth Circuit.
 June 17, 1994.
 
 Robert F. Barnard, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, LA (court appointed), for appellant Bellazerius.
 Herbert W. Mondros Asst. U.S. Atty., Harry Rosenberg, U.S. Atty., New Orleans, LA, for appellee in No. 93-3157.
 Anthony Louis Billa, pro se.
 Robert F. Barnard, Asst. Federal Public Defender, John V. Mulvehill, Federal Public Defender, New Orleans, LA, for appellant Billa.
 Herbert Mondros, Asst. U.S. Atty., Harry Rosenberg, U.S. Atty., New Orleans, LA, for appellee in No. 93-3168.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, Chief Judge, JONES, Circuit Judge, and FULLAM,* District Judge.
 POLITZ, Chief Judge:
 
 
 1
 Convicted on guilty pleas of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. Sec. 846, Dino Bellazerius and Anthony L. Billa appeal their sentences. Concluding that the career offender provisions of the Sentencing Guidelines should not have been applied, we vacate the sentences and remand.
 
 Background
 
 2
 Bellazerius told undercover agents with the Drug Enforcement Administration that he and Billa were prepared to "cook" methamphetamine in a laboratory located in a portable building behind Billa's house. The agents gave Bellazerius $800 and were told to pick up two pounds of methamphetamine in a couple of days. The agents opted instead to secure and execute a search warrant on the premises, finding numerous pieces of laboratory equipment and a batch of chemicals, including ephedrine, a precursor of methamphetamine.
 
 
 3
 Bellazerius and Billa were indicted for conspiracy to manufacture 25 pounds of methamphetamine in violation of 21 U.S.C. Sec. 846. They pleaded guilty to a superseding conspiracy indictment that did not specify quantity. Bellazerius was sentenced to 327 months imprisonment and Billa was sentenced to 262 months. Both timely appealed and the appeals were consolidated.
 
 Analysis
 
 4
 1. Career Offender Enhancement.
 
 
 5
 Bellazerius and Billa were sentenced as career offenders pursuant to U.S.S.G. Sec. 4B1.1, which provides:
 
 
 6
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 7
 Bellazerius and Billa contend that the Sentencing Commission exceeded its statutory authority by including conspiracies to commit controlled substance offenses within the ambit of that guideline. We agree.
 
 
 8
 The Background Commentary cites 28 U.S.C. Sec. 994(h) as the source of authority for U.S.S.G. Sec. 4B1.1. It states:
 
 
 9
 28 U.S.C. Sec. 944(h) mandates that the Commission assure that certain "career" offenders, as defined in the statute, receive a sentence of imprisonment "at or near the maximum term authorized." Section 4B1.1 implements this mandate.
 
 
 10
 28 U.S.C. Sec. 994(h) directs the Commission to promulgate guidelines specifying a sentence of imprisonment at or near the maximum authorized term for a defendant 18 years or older who:(1) has been convicted of a felony that is--
 
 
 11
 (A) a crime of violence; or
 
 
 12
 (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. Sec. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. Secs. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. Sec. 955a); and
 
 
 13
 (2) has previously been convicted of two or more prior felonies, each of which is--
 
 
 14
 (A) a crime of violence; or
 
 
 15
 (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. Sec. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. Secs. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. Sec. 955a).
 
 
 16
 The authorizing statute does not include the offense of which Billa and Bellazerius were convicted--conspiracy to violate the narcotics laws, 21 U.S.C. Sec. 846--as a trigger for career offender enhancement.
 
 
 17
 The Sentencing Commission nevertheless included conspiracies within the reach of U.S.S.G. Sec. 4B1.1. Application Note 1 to Sec. 4B1.1 states that "controlled substance offense" is defined in section 4B1.2, which in turn provides:
 
 
 18
 The term "controlled substance offense" means an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.[1]
 
 
 19
 Application Note 1 to Sec. 4B1.2 explains that the term "controlled substance offenses" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." The guideline definition of "controlled substance offense" is broader than the statutory definition in section 994(h).
 
 
 20
 The government argues that other statutory provisions, notably section 994(a), provide the requisite authority in the event that section 994(h) falls short. A drug conspiracy does not require proof of an overt act;[2] talking alone is enough. If this were a case in which the defendants had done no more than talk, we would be inclined to find the government's position plainly erroneous. Congress intended section 994(h) to reach repeat violent offenders and repeat drug traffickers.[3] A defendant convicted thrice for merely talking about committing a drug offense would be neither. Nor is there justification for treating him as such on the basis of Congress's general directive that the Commission prescribe sentences commensurate with the seriousness of the offense and the criminal history of the offender.[4]
 
 
 21
 As noted, however, Bellazerius and Billa did much more than talk; they made extensive purchases to establish a laboratory. Bellazerius has a prior drug conspiracy conviction as well as a conviction for using a communications facility to facilitate a drug offense. Billa has two prior convictions for robbery and one for bank robbery.
 
 
 22
 This brings us to the inquiry whether the Commission in fact exercised its authority under section 994(a)-(f) in promulgating U.S.S.G. Sec. 4B1.1. Recognizing that there is a circuit split on this question, we agree with our colleagues in the D.C. Circuit who held in United States v. Price[5] that it did not.
 
 
 23
 The Background Commentary states in clear, unambiguous language that U.S.S.G. Sec. 4B1.1 was promulgated to implement section 994(h). In United States v. Heim[6] the Ninth Circuit disagreed with Price and held that the commentary did not exclude other sources of authority.[7] We are persuaded, however, that "when people say one thing, they do not mean another."[8] The Sentencing Commission would not have said that section 4B1.1 was intended to implement section 994(h) if it intended the guideline to implement other parts of its enabling legislation as well. By identifying section 994(h) as its source of authority, the Sentencing Commission impliedly disclaimed reliance on other sources of authority.[9]
 
 
 24
 Our conclusion is buttressed by the Commission's proposed amendment to the Background Commentary to section 4B1.1.[10] The amendment, which will take effect unless Congress says otherwise, expands the authority for the guideline. Significantly, the synopsis does not characterize the amendment as one of "clarification." Rather, it characterizes the amendment as a response to Price, noting that the Price court "did not foreclose Commission authority to include conspiracy offenses under the career offender guideline by drawing upon its broader guideline promulgation authority in 28 U.S.C. Sec. 994(a)." That explanation satisfies us that the Commission's present invocation of broader authority to support section 4B1.1 is a prospective application.[11]
 
 
 25
 It is a venerable principle of administrative law that agency "action must be measured by what the [agency] did, not by what it might have done."[12] Agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."[13] Pursuant to its authority under section 994(a)-(f), the Commission could have conducted an analysis that found that certain offenders outside the reach of section 994(h) warranted the same punishment as section 994(h) career offenders. Instead of so doing, it mistakenly interpreted section 994(h) to include convictions for drug conspiracies. We cannot uphold a guideline on the basis of authority on which the Commission did not rely at the time of promulgation. Because the Commission promulgated section 4B1.1 under the authority of 28 U.S.C. Sec. 994(h), it is invalid to the extent that its scope exceeds the reach of that section of the statute. The guideline should not have been applied to the defendants herein.
 
 
 26
 Alternatively, the government contends that any error in the application of the career offender guideline to Bellazerius was harmless because the district court stated that it would have departed upward to the same sentence had section 4B1.1 not applied. That sua sponte determination occurred in an addendum to the written reasons for sentence issued after the sentencing hearing and without the mandated notice to the parties of the possibility of an upward departure. In this posture a departure would not comport with the requirements of Rule 32 of the Federal Rules of Criminal Procedure and any sentence imposed would have to be vacated.[14]
 
 
 27
 2. Quantity.
 
 
 28
 The district court calculated Billa's and Bellazerius's sentences on the basis of its finding that the laboratory was capable of producing more than 1000 grams of methamphetamine. The defendants object, denying that the laboratory was capable of producing methamphetamine and asserting abandonment of any intent to do so. We review the district court's determination of quantity for clear error.[15]
 
 
 29
 When law enforcement authorities executed their search warrants, they found laboratory equipment and eight containers of liquid solution. George Lester, a forensic chemist for the DEA, examined the site, estimated the total quantity of liquid, and took samples from each container. The remaining solution was deemed hazardous and was destroyed. Lester found ephedrine in each sample. Based on the amount of ephedrine, the total quantity of liquid solution found, and the conversion ratio between ephedrine and methamphetamine, Lester determined that more than 1000 grams of methamphetamine could have been produced. Lester's analysis amply supports the court's quantity determination.[16]
 
 
 30
 The defendants attempt to distinguish Sherrod on the ground that the samples there seized contained methamphetamine. They do not challenge Lester's ratio for converting ephedrine to methamphetamine; indeed, their expert used the same ratio. That distinction, therefore, is pertinent only to defendants' contention that they were incapable of producing methamphetamine and had abandoned any intent to do so. The sole record evidence in support of their assertion, however, is the presence of Draino in the samples, the absence of a necessary piece of laboratory equipment, and the fact that the equipment was unassembled. Lester testified that Draino was used in the manufacturing process. The court could infer from Bellazerius's representations to the undercover agents that the defendants intended to purchase the remaining equipment and to assemble a functional laboratory.[17] The argument fails to persuade.
 
 
 31
 Finally, Bellazerius and Billa contend that the district court should have calculated their base offense levels by the Chemical Quantity Table for precursor chemicals found in U.S.S.G. Sec. 2D1.11. That method would have yielded a lower base offense level. U.S.S.G. Sec. 2D1.11(c)(1), however, provides:
 
 
 32
 If the offense involved unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully, apply Sec. 2D1.1 ... if the resulting offense level is greater than that determined above.
 
 
 33
 Conspiracy to manufacture methamphetamine is such an offense.[18] The district court properly used the Drug Quantity Table found in section 2D1.1.
 
 
 34
 3. Minor role in offense.
 
 
 35
 Billa contests the district court's refusal to award a downward adjustment under section 3B1.2 for playing a minor role in the conspiracy. He admits, however, that he made his property available for the laboratory and paid for the chemical ingredients and the glassware. The denial of a downward adjustment was not clearly erroneous.[19]
 
 
 36
 4. Refusal to allow withdrawal of guilty plea.
 
 
 37
 Billa moved unsuccessfully to withdraw his guilty plea on the ground that it was induced by the government's promise to drop the allegedly groundless charges against his wife. On the day that Billa pleaded guilty his wife was dismissed from the indictment. The government responds that Billa has presented no evidence of a quid pro quo but does not expressly deny it.
 
 
 38
 We have declined to hold plea bargains induced by the promise of leniency toward a third person per se unconstitutional. Nonetheless, we recognize that they "pose a greater danger of coercion than purely bilateral plea bargaining, and that, accordingly, special care must be taken to ascertain the voluntariness of guilty pleas entered in such circumstances."[20] Where, however, the defendant previously affirmed the voluntariness of his plea and his factual guilt at a Rule 11 allocution, as here, we will allow vacatur of his plea only if he establishes that the government did not observe a high standard of good faith based upon probable cause to believe that the third party had committed a crime.[21] Despite the opportunity to do so at a hearing on his motion to withdraw his plea, Billa made no such showing. Accordingly, we reject this assignment of error.
 
 
 39
 5. False affidavit.
 
 
 40
 The defendants contend that physical evidence found on the Billa premises should have been suppressed because the undercover agents deliberately or recklessly misled the magistrate in their application for a search warrant. We are not persuaded. The affidavit accompanying the warrant application provided a substantial basis for the magistrate's finding of probable cause even with the corrections sought by the defendants.[22]
 
 
 41
 The affidavit reflected that Bellazerius had told a reliable confidential informer that he and Billa would manufacture methamphetamine at a laboratory behind Billa's house as soon as they received additional materials from Sun Scientific, Inc. To convince the informer to invest in his operation, Bellazerius showed him a formula that appeared accurate. In exchange for $800, Bellazerius promised to deliver two pounds of methamphetamine.
 
 
 42
 The defendants complain that the affidavit omitted the fact that Bellazerius also showed the informer a list of purchased chemicals that did not match the formula; the formula was for one manufacturing method and the chemicals for another. We do not believe that the inclusion of that information negated the existence of probable cause to believe that evidence of methamphetamine manufacturing would be found at the premises. Equally meritless is the defendants' complaint that the affidavit failed to specify the date on which authorities obtained Billa's criminal history. In this context the date is irrelevant.
 
 
 43
 Finally, the affidavit relates information from a United Parcel Service driver who delivered a package from Sun Scientific on the day after the informer's visit and told agents that she previously had delivered 10 to 15 such packages over a 90-day period. The defendants maintain that this information was inaccurate and incomplete: Billa had lived on the premises for only 45 days, only 2 to 3 packages from Sun Scientific had been delivered, and one package had been returned. That the agents failed to obtain the additional information from the UPS driver may have been negligence, but it did not constitute deliberate deception or recklessness. The application for the warrant sufficiently supports its issuance.
 
 
 44
 For the foregoing reasons, we VACATE the sentences imposed on Billa and Bellazerius and REMAND for resentencing.
 
 
 
 *
 District Judge of the Eastern District of Pennsylvania, sitting by designation
 1 U.S.S.G. Sec. 4B1.2(2).
 
 
 [2]
 United States v. Montoya-Ortiz, 7 F.3d 1171 (5th Cir.1993)
 
 
 [3]
 S.Rep. No. 98-225, 98th Cong., 1st Sess. 175 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3358
 
 
 [4]
 28 U.S.C. Sec. 994(a); 18 U.S.C. Sec. 3553
 
 
 [5]
 990 F.2d 1367 (D.C.Cir.1993)
 
 
 [6]
 15 F.3d 830 (9th Cir.1994)
 
 
 [7]
 See also United States v. Allen, 24 F.3d 1180 (10th Cir.1994)
 
 
 [8]
 2A Sutherland Statutory Construction at Sec. 47.24 at 228 (5th ed. 1992 and 1993 Supp.)
 
 
 [9]
 We also part company with the Heim court in its reliance on the legislative history of section 994(h). See also Allen; United States v. Hightower, --- F.3d ----, 1994 WL 226979 (3d Cir.1994). The legislative history states that section 994(h) is "not necessarily intended to be an exhaustive list of types of cases ... in which terms at or close to the authorized maxima should be specified." 1984 U.S.C.C.A.N. at 3359. That is relevant to whether the Commission had authority under other sections of its enabling statute to exceed section 994(h). It is not relevant to the issue here: whether the Commission in fact acted on the basis of that additional authority
 
 
 [10]
 58 Fed.Reg. 67522-01 (Dec. 21, 1993)
 
 
 [11]
 The synopsis states in full:
 This amendment adds additional background commentary explaining the Commission's rationale and authority for section 4B1.2 (Career Offender). The amendment responds to a recent decision by the United States Court of Appeals for the District of Columbia Circuit in United States v. Price, 990 F.2d 1367 (D.C.Cir.1993). In Price, the court invalidated application of the career offender guideline to a defendant convicted of a drug conspiracy because 28 U.S.C. Sec. 994(h), which the Commission cites as the mandating authority for the career offender guideline, does not expressly refer to inchoate offenses. The court indicated that it did not foreclose Commission authority to include conspiracy offenses under the career offender guideline by drawing upon its broader guideline promulgation authority in 28 U.S.C. Sec. 994(a).
 
 
 [12]
 Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 93-94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943)
 
 
 [13]
 Id., 318 U.S. at 95, 63 S.Ct. at 462. The Eighth Circuit in United States v. Baker, 16 F.3d 854 (8th Cir.1994), neglects this principle in relying on the proposed amendment to uphold the guideline
 
 
 [14]
 Burns v. United States, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991); United States v. Mills, 959 F.2d 516 (5th Cir.1992)
 
 
 [15]
 United States v. Sherrod, 964 F.2d 1501 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 832, 121 L.Ed.2d 701 (1992), --- U.S. ----, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993), and --- U.S. ----, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993), and cert. dismissed, --- U.S. ----, 113 S.Ct. 834, 122 L.Ed.2d 111 (1992)
 
 
 [16]
 See U.S.S.G. Sec. 2D1.1, Application Note 12 (where no drug is seized, the court must approximate the quantity of controlled substance); Sherrod (affirming methamphetamine quantity determination on the basis of sample analysis and estimated container sizes when the original liquid solution and the containers had been destroyed)
 
 
 [17]
 See United States v. Havens, 910 F.2d 703 (10th Cir.1990) (district court could estimate quantity on the basis of confiscated precursor chemicals even though not all necessary elements to manufacture methamphetamine were present), cert. denied, 498 U.S. 1030, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991)
 
 
 [18]
 See United States v. Myers, 993 F.2d 713 (9th Cir.1993)
 
 
 [19]
 See Havens (defendant's claim that his sole role was to store the precursor chemicals did not entitle him to a downward adjustment for minor role in the offense)
 
 
 [20]
 United States v. Nuckols, 606 F.2d 566, 569 (5th Cir.1979) (internal quotation and citation omitted)
 
 
 [21]
 Id.; accord, United States v. Whalen, 976 F.2d 1346 (10th Cir.1992); Martin v. Kemp, 760 F.2d 1244, 1248 (11th Cir.1985)
 
 
 [22]
 See Franks v. Delaware, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 2684-85, 57 L.Ed.2d 667 (1978) (a warrant is valid if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause....")