**Hypolitus NWACHIA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 94–3143 (MTB).

United States District Court,
D. New Jersey.

June 14, 1995.

Hypolitus Nwachia, Ray Brook, NY, pro se.

Neil Gallagher, Asst. U.S. Atty., Newark, NJ, for respondent.

## OPINION

BARRY, District Judge.

### I. INTRODUCTION

Petitioner Hypolitus Nwachia brings this petition, pursuant to 28 U.S.C. § 2255, seek-

ing to have his sentence vacated to allow for the entry of a "not guilty" plea, or, in the alternative, to have his sentence reduced to correct for alleged double-counting and/or to rescind the determination that petitioner qualifies as a Career Offender under U.S.S.G. § 4B1.1.

In support of his argument that his sentence should be vacated, petitioner makes two contentions, both purporting to demonstrate that at his plea his attorney rendered ineffective assistance of counsel. First, petitioner contends that his plea was not voluntary in that his attorney failed to bring to the court's attention a promise allegedly made by the Government in exchange for petitioner's plea of guilty that petitioner claims was subsequently broken. Second, petitioner contends that he was deprived of the effective assistance of counsel inasmuch as his attorney failed to inform him before he pled guilty that he would be sentenced as a Career Offender under the Sentencing Guidelines.

In support of his alternative contention, and the relief he seeks of resentencing to a lesser term, petitioner first claims that this court engaged in impermissible double-counting in calculating his total offense level. Second, petitioner claims that his classification as a Career Offender should be struck because the United States Sentencing Commission overstepped its mandate by including a conviction for conspiracy to violate laws governing controlled substances within its definition of a "controlled substance offense" under the Career Offender guideline.

For the reasons that follow, the petition will be denied.

## II. *PROCEDURAL HISTORY*

On November 1, 1991, petitioner was indicted by a federal grand jury along with two other individuals, Chuddy Augustine Ani and Brandon Mincer, for violations of various narcotics laws. Count 1 of the indictment charged that between October 1, 1991 and October 31, 1991, the three defendants knowingly and intentionally conspired to distribute and to possess with intent to distribute more

than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count 2 charged petitioner and Mincer with knowingly and intentionally possessing more than 100 grams of heroin during the same time period. Johna Hillgrove, petitioner's girlfriend, was contemporaneously charged in a separate information with intent to distribute 100 grams of heroin.

In conjunction with cooperating plea agreements, Ani and Mincer pled guilty to Count 1 of the indictment on January 13, 1992. On January 31, 1992, petitioner entered into a plea agreement with the Government. Petitioner's plea was entered on the same day. Pursuant to the terms of his non-cooperating plea agreement, petitioner pleaded guilty to Count 1 of the indictment and the Government subsequently dismissed Count 2.

Petitioner was sentenced on April 30, 1992 as a Career Offender under § 4B1.1 of the Sentencing Guidelines based upon two prior convictions involving controlled dangerous substances.[1] The term of incarceration imposed—210 months—was appealed by petitioner *pro se* to the Court of Appeals for the Third Circuit. By judgment order dated March 21, 1994, the Third Circuit affirmed the judgment of sentence.

## III. *DISCUSSION*

A challenge to the validity of a guilty plea based on a claim of ineffective assistance of counsel is governed by the two-part test enunciated by the Supreme Court of the United States in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Thomas v. United States,* 27 F.3d 321, 325 (8th Cir.1994); *Figueroa v. United States,* 1993 WL 88213, *3 (S.D.N.Y.), *aff'd without opinion,* 17 F.3d 391 (2d Cir. 1993). Under *Strickland,* to prevail on an ineffective assistance of counsel claim, petitioner must demonstrate both (1) that counsel's representation "fell below an objective standard of reasonableness", *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064; and (2) that

---

1. Petitioner had been convicted in Superior Court, Essex County, on April 18, 1986 for possession of a controlled substance with intent to distribute and on August 15, 1990 for possession of 8.61 grams of cocaine with intent to distribute.

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Thomas,* 27 F.3d at 325; *Figueroa,* 1993 WL 88213, at \*3.

### A. Counsel's Failure to File a Motion Seeking to Withdraw the Plea Due to the Alleged Failure of the Government to Adhere to the Terms of its Plea Agreement

█ Petitioner's first ground in support of his ineffective assistance claim involves a purportedly unkept promise by the Government that neither petitioner nor his counsel saw fit to report to the court during the plea colloquy. Specifically, petitioner alleges that the Government promised to dismiss the charges pending against Ms. Hillgrove in exchange for petitioner's guilty plea. Parenthetically, it could well be argued and, perhaps, should be argued that petitioner is barred from raising this claim because it was raised on direct appeal—albeit bereft of the ineffective assistance of counsel clothing it now bears—and rejected. It is well established, of course, that absent circumstances not evident here, § 2255 may not be employed to relitigate questions raised and considered on direct appeal. *Barton v. United States,* 791 F.2d 265, 267 (2d Cir.1986); *United States v. Palumbo,* 608 F.2d 529, 533 (3d Cir.1979), *cert. denied,* 446 U.S. 922, 100 S.Ct. 1861, 64 L.Ed.2d 278 (1980). In an exercise of caution, however, because of the "ineffective assistance" trappings, this court will revisit the issue.

Petitioner faces several daunting obstacles if he is to prevail on his ineffective assistance of counsel claim or even receive the evidentiary hearing he requests. Most importantly, petitioner's statements at his Rule 11 plea colloquy directly contradict the claim that there existed any agreement beyond that set forth on the record. The following passage from the plea colloquy amply demonstrates that glaring contradiction:

THE COURT: I understand there is a plea agreement in this case. Mr. Cecchi, would you set forth the full terms on the record please.

MR. CECCHI: Yes, Your Honor. The full terms of the plea agreement is that Mr. Nwachia will plead guilty to Count 1. At sentencing, the United States will dismiss Count 2 of the indictment, and that's basically the parameters of the plea agreement. Would you like me to go through the penalties?

THE COURT: No, you don't have to go through the penalties. There is a cooperating plea agreement?

MR. CECCHI: Not a cooperating plea agreement.

THE COURT: All right.

MR. CECCHI: We have not stipulated at this point to anything.

THE COURT: All right. Mr. Marra, are there any terms of the plea agreement that you believe should be set forth on the record?

MR. MARRA: I don't believe so, Your Honor.

THE COURT: More importantly, Mr. Nwachia, are there any promises that have been made to you that have not been set forth by Mr. Cecchi?

MR. NWACHIA: No, Your Honor.

THE COURT: Has anybody promised you what sentence you will receive?

MR. NWACHIA: No, Your Honor.

THE COURT: Because I have no idea what sentence you will receive. Do you understand you could not come back at a later date and tell me that other promises were made to you unless they're set forth here and now?

MR. NWACHIA: No, Your Honor.

THE COURT: You don't understand ... Do you understand—

MR. NWACHIA: Yes.

THE COURT: Okay. All right.

MR. MARRA: He understands, yes, that he cannot come back.

THE COURT: He cannot come back and tell me that they told you something and promised you something unless you tell me what that promise is now. Right?

MR. NWACHIA: True, Your Honor.

*Transcript of Plea Proceedings dated January 31, 1992,* at 5–6.

In addition to the above statements, which petitioner now disavows, prior to the plea colloquy petitioner signed a written plea agreement setting forth the terms of the agreement between the Government and himself. This document makes no mention of the purported agreement to dismiss all charges against Ms. Hillgrove, and likewise confirms that no additional agreement existed between the Government and petitioner outside of the agreement to dismiss Count 2. The relevant part of the plea agreement reads as follows:

This letter sets forth the full and complete agreement between Hypolitus Nwachia and the United States Attorney for the District of New Jersey....

Conditioned on the understandings specified below, the United States will accept a guilty plea from Hypolitus Nwachia to Count 1 of the Indictment, Criminal No. 91–507 (MTB), which charges Hypolitus Nwachia with conspiracy to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. § 846. If Hypolitus Nwachia enters a guilty plea and is sentenced on this charge, the United States Attorney for the District of New Jersey will not bring any further charges against Hypolitus Nwachia relating to his participation in the heroin trafficking crimes charged in the Indictment, Criminal No. 91–507(MTB). In addition, at the time of sentencing in this matter, the United States will move to dismiss Count 2 of the Indictment, Criminal No. 91–507(MTB), against Hypolitus Nwachia.

*Plea Agreement,* at 1. Petitioner signed this document on page 3, directly below the following passage:

I have received this letter from my attorney, Allen Marra, Esq., and have read it, and I understand it fully. I hereby acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the District of New Jersey. I state that there have been no additional promises or representations made to me by any officials or employees of the United States Government or by my attorney in connection with this matter.

Despite this powerful record indicating that no agreement other than the agreement to dismiss Count 2 was ever entered into between petitioner and the Government, petitioner nevertheless contends that the Government agreed to dismiss all charges against Ms. Hillgrove in exchange for his guilty plea. Petitioner's sole evidence in support of his contention that the Government made such a promise is an affidavit that petitioner evidently and inartfully prepared and that was signed on July 26, 1993 by his attorney, Allen C. Marra. In relevant part, that affidavit states that "[f]ollowing a plea negotiation, the prosecutor promised to dismiss Hillgrove,s [sic] indictment in exchange for Nwachia to plea [sic] guilty to conspiracy to district [sic] heroin ... This agreement was orally communicated to the defendants in the court in Newark after Nwachia refused to acceipt [sic] the plea with other negotiations." *Affidavit of July 26, 1993.* Pursuant to a more recent affidavit submitted at the court's request and on notice to petitioner, Mr. Marra has asserted that this passage erroneously characterizes the events leading up to the guilty plea, that any agreement involving the dismissal of charges against Ms. Hillgrove "was not finalized", and that "[t]he reason it was not set forth on the record is simply because it was not part of the plea bargain." *Affidavit of April 21, 1995,* at 1–2.

A petitioner pressing a claim of ineffective assistance of counsel may dovetail that claim with a claim that his plea was involuntary. "Where, as here, a defendant is represented by counsel during the plea process and he enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill,* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Under *Hill,* a petitioner must satisfy the two prongs of the *Strickland* test by showing that his counsel's performance fell below an objective standard of reasonableness and that "there is a proba-

bility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial". *Hill,* 474 U.S. at 59, 106 S.Ct. at 370.

Here, petitioner must attempt to make this showing in the face of the plea colloquy at which both he and his counsel denied the existence of any additional agreements beyond that set forth on the record. A petitioner faces a virtually insurmountable barrier when confronted by a thorough Rule 11 colloquy:

> This court agrees with the reasoning of the fifth circuit in *Moore v. Estelle,* 526 F.2d 690 (5th Cir.), *cert. denied,* 426 U.S. 953 [96 S.Ct. 3180, 49 L.Ed.2d 1192] (1976), ... that where the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 526 F.2d at 696–97 (citations omitted) ... It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract-law standards.'" *United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980) (citation omitted). To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court, and that therefore there was no breach of agreement in this case.

*Baker v. United States,* 781 F.2d 85, 90 (6th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986) (petitioner unsuccessfully claimed that broken oral promise by Government to stand mute at sentencing as to length of sentence rendered plea involuntary); *see also, Warner v. United States,* 975 F.2d 1207, 1212–13 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993).

■ The rule that a petitioner may be permitted to demonstrate that his plea was involuntary because of extraordinary circumstances even in the wake of a Rule 11 plea colloquy is derived from *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). In *Blackledge,* the petitioner, who received a sentence of 17 to 21 years in prison, claimed that he had pled guilty because he had been promised that he would face a maximum sentence of only ten years if he did not insist on going to trial. At the time of petitioner's plea, North Carolina employed a procedure whereby the judge read a mere ten questions from a form and the court clerk wrote in "yes" or "no" after each question to reflect the petitioner's response. The "transcript" of the proceedings "consist[ed] of nothing more than the printed form filled in by the clerk and signed by [the petitioner] and the state-court judge." *Id.,* at 69, 97 S.Ct. at 1627. Thus, "[t]here [was] no way of knowing whether the trial judge in any way deviated from or supplemented the test of the form [and] [t]he record [was] silent as to what statements [petitioner], his lawyer, or the prosecutor might have made regarding promised sentencing concessions." *Id.,* at 77, 97 S.Ct. at 1631.

The *Blackledge* Court was concerned that the "procedure itself reflected the atmosphere of secrecy which then characterized plea bargaining generally.... [and] [t]he process thus did nothing to dispel a defendant's belief that any bargain struck must remain concealed ...". *Id.*[2] Under such

2. The Court noted that "[o]nly recently has plea bargaining become a visible practice accepted as a legitimate component in the administration of criminal justice. For decades it was a *sub rosa* process shrouded in secrecy and deliberately concealed by participating defendants, defense lawyers, prosecutors, and even judges." *Id.,* at 76, 97 S.Ct. at 1630. The Court further noted that "it was not until our decision in *Santobello* *v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that lingering doubts about the legitimacy of the practice were finally dispelled." *Id.* The Court was also quick to point out that the petitioner in *Blackledge* "was arraigned a mere 37 days after the *Santobello* decision was announced, under a North Carolina procedure that had not been modified in light of *Santobello* or earlier decisions of this Court

circumstances, the *Blackledge* Court held that where a petitioner has advanced specific factual allegations concerning a purported additional agreement, "[t]he critical question is whether these allegations, when viewed against the record of the plea bargaining, [are] so 'palpably incredible', [*Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962) ], so 'patently frivolous or false', *Herman v. Claudy,* 350 U.S. 116, 119 [76 S.Ct. 223, 225, 100 L.Ed. 126] (1956), as to warrant summary dismissal." *Blackledge,* 431 U.S. at 76, 97 S.Ct. at 1630.

The *Blackledge* Court, however, was quick to note the changing climate of plea bargaining procedures. The Court pointed out that since petitioner's sentencing, North Carolina had overhauled its plea colloquy to reflect the legitimacy of plea bargaining. Specifically, the new procedures directed the judge to inquire of the defendant, the defendant's attorney, and the prosecutor whether any plea bargain had been struck, and all such proceedings were to be transcribed *verbatim.* Significantly for the present case, the *Blackledge* Court noted that "[t]hese reforms are quite similar to those undertaken in the 1974 Amendment of Fed.Rule Crim.Proc. 11", *Id.,* at 79, n. 18, 97 S.Ct. at 1632, n. 18, the precursor of the rule under which questions were asked of petitioner at his Rule 11 plea colloquy.

The Court, albeit in dicta, underscored the significantly different rule that should apply when adequate procedural safeguards such as those embodied in North Carolina's modernized plea colloquy guidelines or under Rule 11 are employed. "Had these commendable procedures been followed in the present case, Allison's petition would have been cast in a very different light." *Id.,* at 79, 97 S.Ct. at 1632. The Court went on to explain that "[t]he careful explication of the legitimacy of plea bargaining, the questioning of both lawyers, and the verbatim record of their answers would almost surely have shown whether any bargain did exist and, if so, insured that it was not ignored." *Id.,* at 79–80, 97 S.Ct. at 1632. Importantly, the Court stated that a far more demanding standard should be applied where Rule 11-type plea colloquies are employed:

> [A] petitioner challenging a plea given pursuant to procedures like those now mandated in North Carolina will necessarily be asserting that not only his own transcribed responses, but those given by two lawyers, were untruthful. Especially as it becomes routine for prosecutors and defense lawyers to acknowledge that plea bargains have been made, such a contention will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances.

*Id.,* 431 U.S. at 80, n. 19, 97 S.Ct. at 1632, n. 19.

The question here becomes, therefore, whether the submission of an early affidavit, signed by petitioner's counsel but later disavowed, which corroborates petitioner's assertion that an unwritten agreement to drop the charges against Ms. Hillgrove was reached creates an "extraordinary circumstance" sufficient to warrant an evidentiary hearing. The answer is a ringing "no".

First, the only piece of evidence relied upon by petitioner other than his say so—the July 26, 1993 affidavit—has, as noted, been specifically disavowed by the affiant.[3] Sec-

recognizing the process of plea bargaining." *Blackledge,* 431 U.S. at 76–77, 97 S.Ct. at 1630–31.

**3.** This court is aware that where a petitioner supports his allegations of an unkept promise with an affidavit of a credible third party, an evidentiary hearing may be required. *See United States v. Sanderson,* 595 F.2d 1021, 1022 (5th Cir.1979) ("Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty.... However, in cases such as the present one, where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is

entitled to a hearing on his allegations. *Blackledge v. Allison,* 431 U.S. 63 [97 S.Ct. 1621, 52 L.Ed.2d 136] (1977)".). However, a petitioner's own affidavit that contradicts his in-court statements will not be enough to warrant an evidentiary hearing. *Bryan v. United States,* 492 F.2d 775 (5th Cir.1974), *cert. denied,* 419 U.S. 1117, 95 S.Ct. 798, 42 L.Ed.2d 817 (1975). In the present case, the affidavit relied upon by petitioner cannot be considered reliable for a variety of reasons, including the specific disavowal of its contents by the affiant.

ond, and perhaps of greater importance, petitioner has offered no explanation whatsoever for his silence as to the purported agreement at the plea colloquy and his denial that any such agreement existed. Thus, no "extraordinary circumstances" exist such that an evidentiary hearing is warranted.[4] *See Blackledge,* 431 U.S. at 76, 97 S.Ct. at 1630.[5] It follows inexorably that counsel's "failure" to put the supposed agreement on the record was not ineffective assistance of counsel.

### B. Counsel's Failure to Inform Petitioner Prior to the Entry of the Plea of the Likelihood that he would be Classified as a Career Offender under the Sentencing Guidelines

Petitioner also argues that he was denied the effective assistance of counsel because his attorney "fail[ed] to explain to petitioner before [his] plea of guilty that he might be classified as a career offender and be subject to enhanced penalties under the sentencing guidelines." *Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255,* at 19. Petitioner contends that had he been informed of this possibility, he would not have pleaded guilty.[6] Petitioner also claims that after he received the presentence report

and learned that he might be classified as a Career Offender, his attorney nonetheless assured him that that provision would not apply to him. *Id.* Moreover, petitioner contends that his attorney told him that he would likely receive the minimum sentence of the five to forty year range he faced, and that he might accordingly spend between three-and-one-half to four years in prison. *Id.,* at 26.

■ The claim that petitioner should be afforded relief because he was inadequately informed of his Career Offender status by his attorney has, however, been explicitly rejected by the Eighth Circuit, and will be rejected here. In *Thomas v. United States,* 27 F.3d 321 (8th Cir.1994), Thomas contended that he was improperly sentenced under the Sentencing Guidelines as a Career Offender because, at the time he entered his plea, he had not been informed by either the district court or his counsel that he could be so sentenced. At his guilty plea, Thomas had been informed by the court that he faced a maximum term of imprisonment of 20 years on count 4 and 40 years on Count 6. Thomas stated that he understood those maximum sentences. He also answered "yes" to the following questions from the court:

4. This court is somewhat surprised at the continued reliance in cases such as *Lesko v. Lehman,* 925 F.2d 1527 (3d Cir.), *cert. denied,* 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991) and *Zilich v. Reid,* 36 F.3d 317 (3d Cir.1994) on *United States v. Valenciano,* 495 F.2d 585, 587 (3d Cir.1974), a pre-*Blackledge* case, in which the court stated that:

 "[w]here the voluntariness of the plea is attacked with an assertion that one's counsel or the prosecutor, or both, made an out-of-court arrangement or 'proposition' as to the outcome of a sentence which differs from that pronounced by the court, an evidentiary hearing will ordinarily be necessary on a § 2255 motion attacking the voluntariness of the plea."

 This statement from *Valenciano,* which involved a Rule 11 plea colloquy, would no longer seem to be viable in light of the "extraordinary circumstances" language of *Blackledge.* That aside, however, in both *Lesko* and *Zilich,* unlike here, petitioners' assertions were amply corroborated. Moreover, and presumably in deference to *Blackledge's* disaffection for "indiscriminate hearings in federal post-conviction proceedings", 431 U.S. at 71, 97 S.Ct. at 1628, the *Lesko* and *Zilich* courts required petitioners to advance "specific

and credible" allegations detailing the extraordinary circumstances which would warrant relief. *Lesko,* 925 F.2d at 1537; *Zilich,* 36 F.3d at 320–21.

5. This conclusion is reinforced by the submission of Rena Rothfeld, the attorney for Ms. Hillgrove, in which she states that "[a]t no time do I recall [the Assistant U.S. Attorney] offering me dismissal of the charges against Ms. Hillgrove if Mr. Hipolitus [sic] pleaded guilty." *Letter of Rena Rothfeld to James Cecchi, AUSA, dated September 7, 1994.*

6. Parenthetically, petitioner observes that had he known the ramifications of Career Offender status, he would have agreed to testify against his co-defendants. *Id.* at 20. Aside from the fact that this observation is wholly inconsistent with his claim that, with knowledge of the ramifications, he would not have pleaded guilty, the statement is absurd on its face: his co-defendants pleaded guilty under cooperating plea agreements weeks before petitioner leaving only the girlfriend, who he now claims he was purportedly trying to save, to be the "beneficiary" of his testimony.

Do you understand that the Court is not going to be able to determine the guidelines sentence for you until after the presentence report has been completed and you and the Government have had an opportunity to challenge any facts reported by the probation officer?

Do you also understand that after it has been determined what guideline applies to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

Do you also understand that if the sentence imposed upon you is more severe than you may have expected, that you will still be bound by your plea agreement and by the plea of guilty, that you will have no right to withdraw your guilty pleas?

And just so there's no misunderstanding between us, Mr. Thomas, do you understand that if you plead guilty here today you're putting the next 60 years of your life and $3,000,000 of your money right on the line?

*Thomas,* 27 F.3d at 323. The Eighth Circuit noted that Thomas also indicated, in response to the district court's questioning, that he was satisfied with his attorney's representation, as did petitioner here. *Id.*

Soon thereafter, a presentence investigation report was prepared recommending that Thomas be sentenced as a Career Offender in light of two previous felony convictions. At the sentencing hearing, the judge determined that Thomas qualified as a Career Offender and subsequently sentenced him to 262 months imprisonment on Count 6 and 210 months on Count 4, to be served concurrently. *Id.*

After an unsuccessful appeal, Thomas submitted a § 2255 petition alleging, among other things, that he had not received effective assistance of counsel in that his "trial lawyer did not discuss with him prior to his guilty plea the fact that he could be convicted as a career offender." *Id.,* at 324. The district court dismissed Thomas' § 2255 motion with prejudice and without a hearing.

On appeal, the Eighth Circuit affirmed the district court, initially noting the difficulty in ascertaining the guideline range at the time of the entry of the plea.

At the time of the plea hearing, it was impossible to know, or even predict, whether Thomas would be sentenced as a career offender. As the district court pointed out at that hearing, and as Thomas stated he understood, the court would be 'unable to determine the guideline sentence' for him 'until after the pre-sentence report had been completed'.

*Id.,* at 325, 326. The court noted as well that after having received the presentence report with the recommendation that Thomas be treated as a Career Offender, Thomas' counsel challenged that recommendation on several grounds. No request for a withdrawal of his plea, however, was voiced either by Thomas or his counsel based upon Thomas' lack of awareness of the possibility of being treated as a Career Offender. As the court noted, "[i]f his lawyer's failure to advise him of the possibility that he might be treated as a career offender constituted ineffective assistance of counsel, one would have expected Thomas to have raised the issue at that time." *Id.* at 326.

Furthermore, the court endorsed the district court's statement that Thomas' "right to be apprised of the court's sentencing options is no greater than the provisions of Fed. R.Crim.P. 11(c)(1), which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." *Id.* The court continued:

Our ruling in the prior appeal that the "District Court is not required to inform the defendant of the applicable guideline range" included the possibility of an enhanced sentence as a career offender. In these circumstances, the failure of Thomas' lawyer to inform him of that possibility did not establish that his lawyer's "representation fell below an objective standard of reasonableness."

*Id.* (citations omitted).[7]

This court is presented with virtually the identical claim that was so resoundingly re-

---

7. The district court in *Figueroa v. United States,* 1993 WL 88213 (S.D.N.Y.), grappled with an

jected by the *Thomas* court, i.e. that petitioner's attorney's failure to advise him of the potential applicability of the Career Offender provision of the Sentencing Guidelines constituted ineffective assistance of counsel. As in *Thomas*, petitioner was informed at the time he entered his plea that the court could not predict the likely sentence under the Guidelines until the presentence report was completed. Specifically, the court asked the following questions, which closely mirror the questions relied upon by the *Thomas* court, to which petitioner answered in the affirmative:

> Do you understand that the court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and you and the Government have had an opportunity to challenge the facts reported by the probation officer?

> \* \* \* \* \* \*

identical claim in a § 2255 petition and likewise dismissed the petition. In *Figueroa*, the petitioner argued that his attorney's failure to inform him of the possibility of being classified as a Career Offender amounted to "erroneous legal advice about the ultimately knowable," rather than a mere mistaken prediction as to the length of sentence. *Id.*, at \*4. The district court rejected this argument and held that counsel's failure to advise petitioner of the potential application of the Career Offender provision did not warrant the withdrawal of the guilty plea:

> Even though the Career Offender provision operates in a more mechanical and mandatory fashion than the other Guideline provisions, counsel's advice still cannot be classified as "erroneous legal advice about the ultimately knowable." First, a defendant's criminal history is determined by factors which may not be clear at the time of the plea and which may be determined by the judge at sentencing. (citations). Second, even if the Guideline range has been calculated and is known at the time of the plea, there still exists an inherent uncertainty as to its application.... Therefore, despite the potential applicability of the Career Offender provision, a defendant's sentencing range under the Guidelines is not "ultimately knowable" because of the court's discretionary power to make its own determinations about a defendant's criminal history and, under appropriate circumstances, to depart from the applicable Guideline range.

*Id.*, at \*5–\*6.

Turning to the facts of the case, the district court noted that even after receiving the presentence report which indicated the likely applica-

Do you understand that after it has been determined what guideline applies to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

*Transcript of Plea Proceedings dated January 31, 1992*, at 10–11. In a similar vein, petitioner also indicated that he had received no promises concerning the sentence that he would ultimately receive. *Id.* at 6. And, while the court advised him that it had no idea at that time what sentence he would receive, it informed him of the maximum sentence which he potentially faced—a figure which far exceeded the sentence which was eventually meted out:

> THE COURT: And do you understand that with your plea of guilty, this court could sentence you to a statutory mandatory minimum sentence of five years imprisonment, a maximum penalty of 40 years imprisonment and a two million dollar fine? Pursuant to 21 United States Code

bility of the Career Offender provision, petitioner's attorney continued to tell petitioner that he believed the sentencing judge would depart downward from the potential range due to petitioner's drug addiction and psychological profile. Under these circumstances, the court held that counsel could not be said to have misrepresented the law, and his belief that the judge would depart downward "was not so unreasonable as to constitute ineffective assistance of counsel." *Id.*, at \*6.

More importantly, the court held that even "[a]ssuming arguendo that counsel's erroneous estimate would have constituted a fair and just reason for withdrawal of Figueroa's plea, any erroneous information was corrected by the Court during its thorough allocution." *Id.*, at \*8. At the allocution, "the Court informed Figueroa of the minimum and maximum sentences which he faced and the fact that the Federal Sentencing Guidelines would be applied to his case and taken into consideration at the time of sentencing." *Id.* Under these circumstances, the court held that petitioner had failed to demonstrate that his attorney's representation had fallen "below an objective standard of reasonableness" in satisfaction of the first prong of the *Strickland* test. Thus, the court deemed it "unnecessary to consider whether he has satisfied the prejudice prong of the *Strickland* test—that had he been informed of his recommended sentence under the Guidelines, he would not have pleaded guilty." *Id.*, at \*9.

855, I may impose an alternative fine of twice the gross profits or other proceeds received by you.

\* \* \* \* \* \*

Do you understand what I've just set forth?

MR. NWACHIA: Yes, Your Honor.

*Id.,* at 9.

Finally, after the receipt of the presentence report recommending that petitioner be sentenced as a Career Offender, much like the attorney in *Figueroa,* counsel unsuccessfully attempted to argue for a downward departure in light of petitioner's drug addiction. *See* Answer and Brief of the United States at 3. Petitioner and his counsel did not voice any objection to petitioner's classification as a Career Offender, and, like Figueroa, petitioner did not indicate any desire to withdraw his plea at the time of sentencing based upon this classification.

Given the clear warning that the court could not know in advance what the eventual Guideline range would be until a presentence report was prepared, the fact that petitioner was informed that he faced a maximum sentence of 40 years in prison, and in light of the holdings in *Thomas* and *Figueroa,* it is abundantly clear that petitioner has failed to demonstrate that his counsel's representation "fell below an objective standard of reasonableness." Thus, having failed to satisfy the first prong of the *Strickland* test, this court need not address whether petitioner has demonstrated that it is more likely than not that but for counsel's failure to inform him of the potential applicability of the Career Offender provision, he would have proceeded to trial. Furthermore, no evidentiary hearing is required because, even assuming that counsel failed to inform petitioner of the possibility that he would be sentenced as a Career Offender, his claim fails as a matter of law. Because there is no relevant factual issue, no hearing is required. *See Thomas,* 27 F.3d at 327.

## C. Petitioner's Challenge to the Term of Imprisonment Imposed

Petitioner's alternative claim relates to the length of the sentence which he received.

His attack is twofold. First, petitioner contends that Amendment 506 to the Sentencing Guidelines, effective November 1, 1994, must be retroactively applied to reduce the offense level that was assigned to him based upon his Career Offender status. Second, petitioner contends that he was illegally sentenced as a Career Offender because the Sentencing Commission impermissibly included convictions for *conspiracy* to violate narcotics laws within the definition of "controlled substance offenses" under the Career Offender provision.

Amendment 506 "defines the term 'offense statutory maximum' in § 4B1.1 to mean the statutory maximum prior to any enhancement based on prior criminal record". *Commentary to 4B1.1,* Amendment 506. The purpose of this rule is to avoid "unwarranted double counting". *Id.* Accordingly, "Offense Statutory Maximum" under § 4B1.1 refers to "the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, *not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record". Id.* (emphasis added). Thus, "where the statutory maximum term of imprisonment is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the 'Offense Statutory Maximum' for the purposes of this guideline is twenty years and not thirty years." *Id.*

Petitioner contends that this court engaged in double-counting when it computed his total offense level by enhancing his "Offense Statutory Maximum" by reference to his previous drug convictions and then enhancing his sentence once again by sentencing him as a Career Offender. This claim clearly misconstrues the computations undertaken in this case.

Petitioner was sentenced for conspiracy to distribute 100 or more grams of heroin, contrary to 21 U.S.C. § 841(a)(1) and in violation of 21 U.S.C. § 846. Under § 841(b)(1)(B), any person convicted of an offense involving 100 or more grams of heroin "shall be sen-

tenced to a term of imprisonment which may not be less than 5 years and not more than 40 years". However, "[i]f any person commits such a violation after one or more prior convictions for an offense ... relating to narcotic drugs, marihuana, or depressant or stimulant substances ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment ...". *Id.* Thus, the "Offense Statutory Maximum" for a conviction for conspiracy to distribute 100 or more grams of heroin jumps from 40 years to life imprisonment if the court includes relevant prior felony convictions in its computation.

However, it is crystal clear that this court did not enhance petitioner's offense level twice based upon his prior convictions, although petitioner's prior convictions qualified him for an enhancement as a Career Offender. Even a cursory glance at the Career Offender Sentencing Chart[8] reveals that if petitioner's Offense Statutory Maximum had been calculated as life imprisonment (i.e., if the prior felony convictions had been considered in calculating the Offense Statutory Maximum), his offense level would have been 37 (less credit for acceptance of responsibility, thus becoming 35). However, if the Offense Statutory Maximum was limited to a maximum term of 40 years, the Offense Level would be only 34, which would, with acceptance of responsibility, have been reduced to 32. A review of the Judgment in this case reveals that petitioner's total offense level was determined to be 32, clear evidence that

his Offense Statutory Maximum was based upon a maximum term of 40 years imprisonment and not life imprisonment. Thus, no impermissible double counting took place.

 Petitioner's second contention is based upon his conclusion that the Sentencing Commission exceeded its mandate when it included a conviction for *conspiracy* to distribute a controlled substance within the definition of a "controlled substance offense" under § 4B1.2.[9] Specifically, petitioner contends that the Sentencing Commission went beyond its mandate, as enunciated in 28 U.S.C. § 994(h), which instructs the Commission to assure that certain career offenders, circumscribed by the list of offenses defined in 28 U.S.C. § 994(h), receive sentences of imprisonment at or near the maximum term authorized. *See* U.S.S.G. § 4B1.1, comment. (background). Conspiracy, petitioner argues, is not such an offense.

Preliminarily, it appears that petitioner failed to raise this issue either at sentencing or on direct appeal and has not even argued that there is cause for this failure, a fact that would normally preclude this court from considering the issue on § 2255 review. *See United States v. Essig*, 10 F.3d 968, 977–79 (3d Cir.1993). Even if this court were to overlook this procedural defect, however, it is clear that the issue is without merit under Third Circuit precedent which is, of course, binding on this court.

Petitioner's argument is predicated on a decision of the Court of Appeals for the

---

8. This chart reads as follows:

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12. |

* If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

9. Under § 4B1.2, "controlled substance offense" is defined as follows:

> The term "controlled substance offense" means an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Commentary to § 4B1.2 explains that "[t]he terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment, n. 1. Clearly, then, this definition encompasses conspiracies to distribute controlled substances such as heroin.

District of Columbia which held that the Commission's inclusion of conspiracy convictions within the list of controlled substance offenses under § 4B1.2 went "beyond the Commission's authority under § 994(h)". *United States v. Price*, 990 F.2d 1367, 1369 (D.C.Cir.1993); *see also, United States v. Bellazerius*, 24 F.3d 698, 701–02 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 375, 130 L.Ed.2d 326 (1994). Whatever merit that viewpoint may have, however, is of no moment to this court because *Price* has been explicitly rejected by the Third Circuit.

In *United States v. Hightower*, 25 F.3d 182 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994), the defendant challenged the legitimacy of his classification as a Career Offender because his third and final conviction was for conspiracy to distribute cocaine. The defendant relied largely on *Price*, but the *Hightower* court rejected the *Price* court's holding because it found that the "commentary's expansion of the definition of a controlled substance offense to include inchoate offenses is not 'inconsistent with, or a plainly erroneous reading of' § 4B1.2(2) of the Sentencing Guidelines, and that it does not 'violate[ ] the Constitution or a federal statute.' " *Hightower*, 25 F.3d at 187 (quoting *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).[10] This court is bound by the rule of *Hightower*, and petitioner's claim is rejected.

## IV. CONCLUSION

The grounds advanced in support of petitioner's claim that his counsel was ineffective and, thus, that his sentence should be vacated so that he may enter a plea of "not guilty" and proceed to trial, or, in the alternative, that his sentence should be reduced, fail as a matter of law. The motion, files, and records of this case conclusively showing that petitioner is entitled to no relief, no evidentiary hearing is required and the petition is denied.

An appropriate order shall issue.

## ORDER

This matter having come before the court on a petition, pursuant to 28 U.S.C. § 2255, to vacate petitioner's sentence, or, in the alternative, to reduce his sentence; and the court having considered the submissions of the parties without oral argument pursuant to Fed.R.Crim.P. 47; and

For the reasons expressed in this court's Opinion of even date;

IT IS on this 13th day of June, 1995

ORDERED that the petition to vacate, set aside or correct the sentence is hereby denied.

---

10. The vast majority of circuits which have visited this question have rejected the holdings of *Price* and *Bellazerius* and adopted the reasoning set forth in *Hightower. See United States v. Piper,* 35 F.3d 611, 616–17 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *United States v. Kennedy,* 32 F.3d 876, 888 (4th Cir.1994), *cert. denied sub nom., Ingram v. United States,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995); *United States v. Damerville,* 27 F.3d 254, 256–57 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 445, 130 L.Ed.2d 355 (1994); *United States v. Baker,* 16 F.3d 854, 857 (8th Cir.1994); *United States v. Heim,* 15 F.3d 830, 831–32 (9th Cir.), *cert. denied sub nom., Britenbach v. United States,* —— U.S. ——, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994); *United States v. Allen,* 24 F.3d 1180, 1186 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 493, 130 L.Ed.2d 404 (1994); *United States v. Weir,* 51 F.3d 1031 (11th Cir.1995). This circuit split has been resolved by the Sentencing Commission's amendment to § 4B1.1 which inserts additional background commentary explaining the Commission's rationale and authority for § 4B1.1 and responding to *Price* by explaining that § 994(h) was not the sole enabling statute for the Career Offender guideline and that conspiracy offenses are included under that guideline. This amendment will be effective on November 1, 1995 unless modified or rejected by Congress.